UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17CV-P85-TBR

TORI T. CURTIS                                                                                                    PLAINTIFF

v.

DIONNE HARDIN *et al*.                                                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Tori T. Curtis filed the instant *pro se* 42 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court on initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons stated below, the Court will dismiss some claims and allow others to proceed.

## I.

Plaintiff, an inmate at the Kentucky State Penitentiary (KSP), sues the following KSP personnel in their individual and official capacities: Dionne Hardin and James Beavers, identified as Internal Affairs Corrections Officers; Seth T. Mitchell, a sergeant; Derek Roberts, a "Lieutenant PREA Investigator"; William B. Morrison, a "Lieutenant Chair/Adjustment Officer"; Brittany Fraliex, a "Committee Member"; Adam P. Noles, a "Caseworker-Committee Member"; Michael Mitchell, a caseworker; Skylar Grief, the "Deputy Warden of Transfers"; Troy Belt and Jill Roberts, unit administrators; and Randy White, the KSP Warden. He also sues Jonathan Towery, a KSP inmate.

Plaintiff states that he was sexually assaulted in a restroom by another KSP inmate, Defendant Towery, on December 4, 2016. He alleges that Defendants Beavers, Roberts, and

Mitchell were "very unprofessional at not doing a proper investigation on this non-consensual rape act on me . . . ." Plaintiff alleges as follows:

> Before this incident took place . . . Towery lived acrossed from my cell. I wrote a letter as a joke "to just get laughs," to inmate Towery's neighbor because we always joked. The letter stated "I'll like to have $10.00 dollars and I'll give you beautiful head & give you good pu***. The $10 dollars could be of anything as long as it's not stupid shit." Towery's neighbor laughed it off and showed it passing it to Towery who read it and I guess never gave it back an never throwing it away, keeping it in his cell, I guess. [] Inmate Jonathan Towery has always told me things like I am pretty, that if he was my man how he'd want this or do that.
>
> So on December 4, 2016 while I was in the gymnasium shooting around with a basketball towards the rim Inmate Towery & another guy that with him called me over towards their area. Towery told me to go into the bathroom over to the last corner stall and to wait on him to come in behind me, I asked him why? He told me he's about to fu** me. I told "No," Towery an the guy that was with him told me if I didn't go along doing what inmate Towery wants me to that the – (Towery an the guy along with him also now a third person walked up,) three of them were going to jump me beating me up. "I was scared" and hoping that they were playing a joke on me, minutes later to find they were serious!

Plaintiff states that Defendant Towery then raped him in a restroom stall, giving a detailed account of the incident, resulting in rectal bleeding and "stabbing pains coming from my bottom where Towery just forced himself in me at."

Plaintiff states that later that day he "caught a correction officer making his rounds I stopped him an told him what had happened to me, I also told him that I needed protective custody." Plaintiff reports that he was walked to the segregation unit and then taken to the office of Defendants Hardin and Beavers where a state police officer was also present. He states that they asked him numerous questions and watched surveillance video of Plaintiff and Towery entering the restroom. Plaintiff reports that he was then taken to a hospital "where they did a rape kit on me" and was returned to KSP and placed in protective custody segregation.

Plaintiff continues as follows:

> A few days later I was interviewed by Lieutenant Derek Roberts and Sergeant Seth Mitchell regarding a letter that was found in Jonathan Towery's cell. I didn't write this letter to Jonathan Towery, I wrote to his neighbor as a joke for recreation for laughs. So the only way I can think of how Towery got a hold of this letter is if his neighbor passed it to him either before or after this incident happen in the gymnasium. So this letter that was found in Jonathan Towery cell all of the Defendants I am about to name off is trying to use this note to say that this rape was a consensual act, when the real truth is it was a non-consensual act.

Plaintiff asserts that Defendants Hardin, Beavers, Roberts, and Mitchell investigated the rape and that they "didn't do a full proper investigation, it was very unprofessional of them to take a letter that was found in Jonathan Towery's cell an once they read it they made this whole rape incident out to seem like I lied, telling me it was consensual act . . . ." Plaintiff maintains that he received two disciplinary charges in connection with this incident, a charge for "Prostitution as defined by KRS 529.010" and a charge for "Inappropriate sexual behavior." He asserts that the letter does not justify rape "so these four defendants has quickly turned me from victim to suspect, and then convicted me of two different write up's." Plaintiff argues that these Defendants violated his rights under the Fourth, Eighth, Thirteenth, and Fourteenth Amendments, as well as the Universal Declaration of Human Rights.

Plaintiff further states that on January 5, 2017, he went to his final court hearing regarding the two write-ups. He reports that Defendants Morrison, Fraliex, and Noles were the adjustment committee members who conducted the hearing on his disciplinary charges. He states that he explained the situation described above but that he received "30 days restrictive housing and 90 days Good Time loss" on the charge for prostitution and "15 days restrictive housing" on the charge for inappropriate sexual behavior. Plaintiff maintains, "No matter what a letter said in it because it can never justify rape!! I went asking for help & telling these defendants at this court call hearing the truth only for the truth to be turned around an making me

3

the suspect . . . ." He argues that Defendants Morrison, Fraliex, and Noles violated his Fourth, Eighth, Thirteenth, and Fourteenth Amendment rights, as well as the Universal Declaration of Human Rights.

Moreover, Plaintiff states that Defendants White, Roberts, Belt, Grief, and Mitchell have also violated his rights. He states as follows:

> Each defendant did so by telling me they're putting me in for a transfer. For about 30 days or so I was believeing this until each of them told me that the inmate was transfered who I did have some problems with, they told me that their going to release me back out to general population. These Defendants was releasing me back out to general population where the inmate Jonathan Towery was. Before leaving the segregation unit they made me sign a paper saying that I have no problems with anyone on the yard an want to return out there, they said that if I didn't sign this paper that they'll just make sure that I am just sitting in the segregation unit for a very long time with no pending transfer.
>
> I was scared too death going back out to general population around Towery & his friends plus every one else knowing I came to correctional officers for help. Once I was released back out to the yard Jonathan Towery an a couple of his friends the same friends of his that were buzzing for him - (watching out for c.o.'s) while in the gym that day the rape happen, were tailing close behind. Towery told me that I will be paying him in canteen items once a week & if I couldn't come up with the payment that I better find a way to do so or he was going to beat my face off.

Plaintiff maintains that after he was raped and asked for protective custody, he should not have been allowed back in the yard in general population. He states, "Also to be allowed back out to the yard while inmate Jonathan Towery is, showing that these defendants don't care about anyone's safety but also will put those they suppose to be responsible for life & safety in jeopardy at risk without even a second thought!!" He argues that Defendants White, Roberts, Belt, Grief, and Mitchell violated his First, Fourth, Eighth, Thirteenth, and Fourteenth Amendment rights, as well as the Universal Declaration of Human Rights.

Finally, Plaintiff alleges that Defendant Towery "pressured me into having non-consensual sex with him by threatening that him an his friends were going to beat my face off

4

I didn't do what Towery wanted." He states that Towery anally raped him resulting in bleeding from his anus. He maintains that Defendant Towery violated his First, Fourth, Eighth, Thirteenth, and Fourteenth Amendment rights, as well as the Universal Declaration of Human Rights.

In an attachment to the complaint, Plaintiff states, "I have a lawsuit against him in court pending. I told him about this but he didn't listen, so by this he able to 'retaliation against me.'" This appears to be in response to a question number 2, but the Court cannot determine what question this statement attempts to answer or to whom Plaintiff is referring.

As relief, Plaintiff requests the Court to "issue conflicts against me & all of these defendants to prevent retaliation. So I am ask for transfer. Asking that my 90 days good time days that was taken behind these two write up's are restored to me." He also seeks compensatory and punitive damages and requests that Defendant Towery "face[] charges."

## II.

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

5

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.

### A. *Defendant Towery*

Plaintiff alleges that Defendant Towery violated his constitutional rights. A claim for violation of constitutional rights under § 1983 consists of two elements: (1) the defendant acted under color of state law; and (2) the offending conduct deprived the plaintiff of rights secured by federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). Defendant Towery, a KSP inmate, is not a state actor and did not act under color of state law at any time. He is therefore not subject to suit under § 1983, and the claims against Defendant Towery will be dismissed for failure to state a claim.

### B. *§ 1983 Official-Capacity Claims*

"Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Defendants are employees of KSP, with the exception of Defendant Towery. Claims brought against state employees in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. Moreover, state officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Additionally, the Eleventh Amendment acts as a bar to claims for monetary damages against state employees or officers sued in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169. Therefore, Plaintiff's official-capacity claims against Defendants for money damages must be dismissed for failure to state a claim upon which relief may be granted and for seeking monetary relief from Defendants who are immune from

such relief.

Plaintiff also seeks injunctive relief in the form of issuance of "conflicts against me & all of those defendants to prevent retaliation. So I am ask for transfer. Asking that my 90 days good time days that was taken behind these two write up's are restored to me." This Court, however, does not have the authority to order that prison conflicts be issued. The Supreme Court has recognized that "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions." *Bell v. Wolfish*, 441 U.S. 520, 562 (1979). Therefore, "[p]rison officials therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* Thus, the Court will not order prison officials to order certain conflicts among inmates and staff.

Moreover, the Court has no authority to award a transfer because the law is clear that inmates have no constitutional right to be incarcerated in any particular institution. *Montanye v. Haymes*, 427 U.S. 236 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986). In addition, Plaintiff has failed to demonstrate any state-created liberty interest in being transferred because, in Kentucky, the transfer of prisoners is within the discretion of the corrections cabinet. *See* Ky. Rev. Stat. § 197.065. Likewise, the Court cannot order the restoration of good-time credits in this § 1983 action as more fully explained below.

Plaintiff also requests that Defendant Towery face charges. However, "[i]t is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General." *Powell v. Katzenbach*, 359 F.2d 234, 235 (D.C. Cir. 1965). Indeed, only federal prosecutors, and not private citizens, have authority to initiate federal criminal charges. *Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1986); *see also United States v. Nixon*,

8

418 U.S. 683, 693 (1974) ("Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case."); *Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) ("A private citizen has no authority to initiate a federal criminal prosecution; that power is vested exclusively in the executive branch.").

Therefore, Plaintiff's official-capacity claims against Defendants for injunctive relief will also be dismissed for failure to state a claim.

## *C. § 1983 Individual-Capacity Claims*

### *Failure to protect from sexual assault*

While it is not entirely clear whether Plaintiff is alleging claims of failure to protect against any of the KSP Defendants based on the alleged sexual assault by another inmate, broadly construing the complaint, the Court will address such claims. The Eighth Amendment imposes a duty on corrections officers to take reasonable measures "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Rather, to maintain an Eighth Amendment claim based on a failure to prevent harm, an inmate must allege both an objective and subjective component. *Id*. With regard to the objective component, the plaintiff "must show that he [was] incarcerated under conditions posing a substantial risk of serious harm." *Id.* The subjective component requires the plaintiff to allege that the defendant acted with "deliberate indifference" to that risk. *Id.* "Deliberate indifference is a state of mind akin to criminal recklessness: the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious

9

harm exists, and he must also draw the inference." *Hamilton v. Eleby*, 341 F. App'x 168, 171 (6th Cir. 2009) (internal quotation marks and citations omitted).

Indeed, as the Court of Appeals for the Seventh Circuit explained:

> In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety. Mere negligence (for example if a prison guard should know of a risk but does not) is not enough to state a claim of deliberate indifference under the Eighth Amendment. It is also not sufficient to show that the prison guard merely failed to act reasonably.

*Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (internal quotation marks and citations omitted).

With regard to Plaintiff's allegation that he was raped by another inmate, he cannot maintain a claim against Defendant KSP personnel for failure to protect because he does not allege that any personnel were aware of the risk of harm. Courts have generally held that unexpected incidents are insufficient to establish a claim for deliberate indifference. *See, e.g.*, *Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) ("Courts routinely deny deliberate indifference claims based on surprise attacks.") (citation omitted). Plaintiff does not allege that he complained to prison officials about any threat to his safety. Nothing in the complaint demonstrates that the assault was anything but an unexpected incident or gives any other indication that Defendants knew of and disregarded a risk of harm to Plaintiff.

Therefore, any claim based on alleged failure to protect Plaintiff from sexual assault must be denied for failure to state a claim upon which relief may be granted.

### *Failure to investigate alleged sexual assault*

Plaintiff asserts that several Defendants failed to properly investigate the alleged sexual assault. However, a claim based on an inadequate investigation fails to state a constitutional violation because private citizens have no constitutional or federal statutory right to compel the investigation of another person. *See Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Browder v.*

10

*Parker*, No. 5:11CV-P29-R, 2011 U.S. Dist. LEXIS 64061, at *20 (W.D. Ky. Jun. 15, 2011) ("Private citizens, whether or not they are incarcerated, have no constitutional or federal statutory right to compel the investigation of another person.") (citing *Diamond*, 476 U.S. at 64-65; *White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio 2002)); *Walker v. Schmoke*, 962 F. Supp. 732, 733 (D. Md. 1997) ("[N]o federal appellate court, including the Supreme Court . . . has recognized that there is a federally enforceable right for the victim to have criminal charges investigated at all, let alone with vigor or competence.") (citation omitted). Accordingly, Plaintiff's claims that Defendants failed to properly investigate his allegations will be dismissed for failure to state a claim.

*Disciplinary charges*

Plaintiff also alleges that the disciplinary charges against him violated his rights. The Court construes these claims as alleging that he received a disciplinary action in violation of the Due Process Clause which resulted in him improperly receiving restrictive housing and a loss of good-time credits. To state a Fourteenth Amendment due-process claim, an inmate must allege a deprivation of a liberty interest protected by the Due Process Clause. However, the law is clear that inmates have no constitutional right to be incarcerated in any particular institution, a particular part of an institution, or a particular security classification, unless the state has created a liberty interest in remaining at a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245-48 (1983); *Montanye v. Haymes*, 427 U.S. at 242; *Meachum v. Fano*, 427 U.S. 215, 223-229 (1976); *Beard v. Livesay*, 798 F.2d at 876. This is not the case in Kentucky where classification, segregation, and transfer of prisoners are within the discretion of the corrections department. Ky. Rev. Stat. § 197.065.

Moreover, with respect to the loss of Plaintiff's good-time credits, a state prisoner may

11

not file a § 1983 suit for damages or equitable relief challenging his conviction or sentence if a ruling on his claim would render the conviction or sentence invalid, until and unless the conviction or sentence has been reversed on direct appeal, expunged by Executive Order, declared invalid by a state tribunal, or has been called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). If a ruling on a claim would necessarily render the duration of Plaintiff's confinement invalid, the claim must be dismissed because it simply is not cognizable until the challenged confinement has been remedied by some other process. *Id.* at 487.

In *Edwards v. Balisok*, 520 U.S. 641 (1997), the Supreme Court extended the application of *Heck* to prison disciplinary proceedings. If the inmate's allegations would "necessarily imply the invalidity of the punishment imposed," the claim is not cognizable in a civil action under § 1983. *Id.* at 648. Furthermore, in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Supreme Court reemphasized that "a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id*. at 81-82.

In the instant action, Plaintiff alleges that the disciplinary action against him violated his rights and requests the Court to determine that it was invalid. Nothing in the complaint indicates that Plaintiff's disciplinary conviction was reversed or otherwise invalidated. Success on Plaintiff's claims concerning the disciplinary conviction and loss of good-time credits would necessarily imply the invalidity of his confinement and therefore cannot be brought under § 1983.

Accordingly, Plaintiff's due-process claims based on the disciplinary charges will be

dismissed for failure to state a claim upon which relief may be granted.

To the extent that Plaintiff alleges that the disciplinary charges violated the Eighth Amendment's Cruel and Unusual Punishments Clause, the claim also fails. "A viable Eighth Amendment claim must satisfy both an objective component and a subjective component." *Farmer*, 511 U.S. at 834; *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). The objective component requires that the deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). An inmate must show that he was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (citations omitted). The subjective component requires the defendant to act with "deliberate indifference" to a prisoner's health or safety. *Wilson*, 501 U.S. at 302-03.

"Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). "[H]arsh 'conditions of confinement' may constitute cruel and unusual punishment unless such conditions 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quoting *Rhodes*, 452 U.S. at 347). The alleged conduct must reflect an "unnecessary and wanton infliction of pain" to fall within the ambit of conduct proscribed by the Eighth Amendment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

"'Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an

13

Eighth Amendment Claim.'" *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)); *Merchant v. Hawk-Sawyer*, 37 F. App'x 143, 145 (6th Cir. 2002) ("Merchant presented no evidence that he was denied basic human needs or was otherwise subjected to cruel and unusual punishment by virtue of the conditions in administrative detention or disciplinary segregation."). Plaintiff does not allege that he was denied basic human needs as a result of the disciplinary action against him. Therefore, Plaintiff's allegations fail to state an Eighth Amendment claim, and his Eighth Amendment claims based on the disciplinary action will be dismissed for failure to state a claim.

***Failure to protect in releasing Plaintiff to general population***

Plaintiff also alleges that Defendants White, Jill Roberts, Belt, Grief, and Michael Mitchell misled him into thinking Defendant Towery had been transferred out of KSP and released him to the general population where Defendant Towery is also housed. <u>Upon review, the Court will allow this Eighth Amendment failure-to-protect claim to proceed past initial screening</u>.

***Retaliation***

In an attachment to the complaint, Plaintiff states, "I have a lawsuit against him in court pending. I told him about this but he didn't listen, so by this he able to 'retaliation against me.'" In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory

14

conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

While Plaintiff makes a vague, conclusory assertion of retaliation, he does not allege sufficient facts to support a retaliation claim, and the Court cannot even discern who allegedly retaliated against him. Therefore, the complaint fails to state a retaliation claim, and the claim will be dismissed.

### *Fourth and Thirteenth Amendment claims*

Plaintiff alleges that Defendants violated his rights under the Fourth Amendment, which provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Plaintiff does not explain the factual basis for alleging a Fourth Amendment claim. The Supreme Court has held that a prisoner does not possess "any subjective expectation of privacy . . . in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches and seizures does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Moreover, while the Fourth

Amendment's prohibition against unreasonable seizures bars excessive force against free citizens, *Graham v. Connor*, 490 U.S. 386, 388 (1989), the Eighth Amendment's ban on cruel and unusual punishment bars excessive force against convicted persons. *Whitley v. Albers*, 475 U.S. at 318-22. Since Plaintiff is a convicted prisoner, the Court must analyze his failure-to-protect claims under the Eighth Amendment. To the extent that he is alleging his disciplinary charges violated the Fourth Amendment, that claim must be dismissed for the reasons described above. Accordingly, Plaintiff's Fourth Amendment claims will be dismissed for failure to state a claim.

Plaintiff also alleges violations of the Thirteenth Amendment. The Court will dismiss the Thirteenth Amendment claims as inapplicable to the facts raised in the complaint. *See United States v. Kozminski*, 487 U.S. 931, 942 (1988) ("The Thirteenth Amendment declares that '[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.'").

### D. *Claims under Universal Declaration of Human Rights*

Plaintiff claims that Defendants violated various articles of the Universal Declaration of Human Rights. However, the Universal Declaration of Human Rights is not a treaty or international agreement that imposes legal obligations. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004) ("[T]he Declaration does not of its own force impose obligations as a matter of international law."). Rather, it is a statement of principles aimed at providing a common standard for international human rights. *Id*. at 734-35. Because it is not enforceable in American courts, Plaintiff's claims alleging violations of the Universal Declaration of Human Rights will be dismissed.

**IV.**

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Plaintiff's § 1983 official-capacity claims against all Defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1), (2) for failure to state a claim upon which relief may be granted and for seeking monetary relief from defendants immune from such relief.

**IT IS ORDERED** that Plaintiff's § 1983 individual-capacity claims based on allegations of failure to protect from sexual assault, failure to investigate sexual assault, constitutional violations against Defendant Towery, retaliation, violations of the Fourth and Thirteenth Amendments, and violations of the Universal Declaration of Human Rights are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

As all claims against them have been dismissed, the Court is directed to **TERMINATE** the following Defendants: Hardin, Beavers, Seth T. Mitchell, Derek Roberts, Morrison, Fraelix, Noles, and Towery.

The Court will enter a separate Order Regarding Service and Scheduling Order to govern the claims that have been permitted to proceed.

Date:

cc: Plaintiff, *pro se*
  Defendants
  General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.010